UNITED STATES DISTRICT COURT
for the
DISTRICT OF OREGON
PORTLAND DIVISION

| | | |
|---|---|---|
| MAREESA M. BARRETT, individually, | ) | |
| | ) | Case No.        3:24-cv-01483-AB |
| v. | ) | |
| | ) | |
| OREGON DEPARTMENT OF HUMAN | ) | AMENDED COMPLAINT |
| SERVICES; FARIBORZ PAKSERESHT, Director, | ) | FOR |
| Oregon Department of Human Services in his | ) | VIOLATION OF CIVIL RIGHTS |
| official capacity; APRILLE FLINT-GERNER, | ) | |
| Director Child Welfare Division in her official | ) | (Non-Prisoner Complaint) |
| capacity; MO GLENN, Director Oregon | ) | |
| Governor's Advocacy Office; WENDY POLZEL, | ) | Jury Trial Requested |
| Child Protection Services Supervisor in her official | ) | |
| and individual capacities; JILLIAN KENNEDY, | ) | |
| ODHS Child Welfare Permanency Worker in her | ) | |
| official and individual capacities; CHRISTINA | ) | |
| SUSTRIK, Child Welfare Supervisor in her official | ) | |
| and individual capacities; DARIN MANCUSO, | ) | |
| Former Foster Care Ombudsman in his official | ) | |
| and individual capacities; DONDREA | ) | |
| ELMQUIST in her official and individual | ) | |
| capacities; LOGAN KROCHALIS, in her official | ) | |
| and individual capacities; and SYBILLE BAER, | ) | |
| Assistant Attorney General in her official and | ) | |
| individual capacities. | ) | |

## INTRODUCTION

1.      Plaintiff brings this civil rights action against DHS, its leaders, agents, and associated individuals for deprivation of her rights, privileges or immunities secured by the Constitution of the United States and federal law.  Plaintiff seeks the following relief:  (1) declaratory and injunctive relief for the many deprivations of Plaintiff's rights; (2) compensatory damages for the deprivations of Plaintiff's rights and all injuries suffered by Plaintiff as a consequence of those violations; (3) presumed and nominal damages where applicable; and (4) punitive damages.

## PARTIES

**I.    PLAINTIFF:**

1.     Plaintiff is the mother of a child ("Child"), both of whom have been subjected to the dependency court system of the state of Oregon, Child Welfare, and the Oregon Department of Human Services ("ODHS") for numerous years.  A recent Oregon Appellate Court judgment held that Plaintiff's federal and state rights had been violated by ODHS.  Plaintiff alleges that these and other violations have caused Plaintiff substantial long-term, ongoing, and permanent injury that is the subject of this action.

**II.    DEFENDANTS:**

2.     Defendant Oregon Department of Human Services ("ODHS") is a state agency created and authorized under the laws of the State of Oregon.  It is authorized by law to maintain and ultimately is responsible for maintaining ODHS, and its Child Welfare department, which acts as ODHS' agent in the area of protecting the safety and welfare of children, as well as its Governor's Advocacy Office ("GAO"), which acts as ODHS' agent as an ombuds office to assist the public in working through questions, concerns or complaints about ODHS services or programs.

3.     Defendant Fariborz Pakseresht is the Director of ODHS and is sued solely in his official capacity.  ODHS is the principal human services agency of the government of the state of Oregon and has responsibility for the Child Welfare Agency, which is a subdivision of ODHS. Defendant Pakseresht is responsible for ODHS policies, practices, and operations, and for ensuring that ODHS complies with all applicable federal and state laws.

4.     Defendant Aprille Flint-Gerner is the Director of Child Welfare, a subdivision within ODHS, and is sued solely in her official capacity.  Defendant Flint-Gerner oversees programs including safety, well-being and permanency, and is responsible for Child Welfare's policies, practices, and operations, and for ensuring that Child Welfare complies with all applicable federal and state laws.

5.     Defendant Mo Glenn is the Director of the Governor's Advocacy Office ("GAO"), a subdivision within ODHS, and is sued solely in his official capacity.  Defendant

Glenn oversees and is responsible for the GAO's policies, practices, and operations, and for ensuring that the GAO complies with all applicable federal and state laws.

6.    Defendant Wendy Polzel is currently an ODHS Child Protection Services Supervisor in the Alberta Branch of the Child Welfare Division of ODHS in Portland, Oregon, and is sued in both her official and individual capacities.  Defendant Polzel formerly served as a Permanency Supervisor during relevant times pertaining to this action and supervised two caseworkers during those periods of time.

7.    Defendant Jillian Kennedy is currently an ODHS Child Welfare Permanency Worker in the Alberta Branch of the Child Welfare Division of ODHS in Portland, Oregon and is sued in both her official and individual capacities.  Defendant Kennedy formerly served as a Permanency Worker during relevant times pertaining to this action and was supervised by Defendant Polzel.

8.    Defendant Christina Sustrik is currently an ODHS Child Welfare Supervisor in the Alberta Branch of the Child Welfare Division of ODHS in Portland, Oregon and is sued in both her official and individual capacities.  Defendant Sustrik formerly served as a Child Welfare Supervisor during relevant times pertaining to this action.

9.    Defendant Darin Mancuso is a former Foster Care Ombudsman working in the GAO at times relevant to this action, and is sued in both his official and individual capacities.

10.    Defendant Dondrea Elmquist is an individual who acts as ODHS' approved agent in the area of foster placement for Plaintiff's Child and is also related by blood to Plaintiff. Defendant Elmquist is sued in both her official and individual capacities.

11.    Defendant Logan Krochalis is an attorney who formerly acted as representation for Plaintiff's Child at times relevant to this action.  Defendant Krochalis is sued in both her official and individual capacities.

12.    Defendant Sybille Baer is an Assistant Attorney General in the Child Advocacy Section of the Oregon Department of Justice who has acted as representation for ODHS at times relevant to this action.  Defendant Baer is sued in both her official and individual capacities.

/// /// ///

/// /// ///

## JURISDICTION AND VENUE

13.     This action arises under the Constitution and laws of the United States and 42 U.S.C. § 1983.  This Court has jurisdiction pursuant to (a) 28 U.S.C. §§ 1331 – Federal Question, 1343 – Civil Rights, 1367 – Supplemental, as well as under (b) 45 CFR § 1356.21 (requiring reasonable efforts to facilitate reunification); (c) the Adoption Assistance and Child Welfare Act of 1980 ("AACWA") 42 U.S.C. § 670 et seq.; (d) the American with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2); (e) Section 504 of the Rehabilitation Act ("Section 504" or "RA"), 29 U.S.C. § 794, and the respective implementing regulations; (f) parental liberty interests protected by the Fourteenth Amendment to the United States Constitution as implemented by ORS 419B.090(2)-(5); (g) 18 U.S.C. § 241 and 18 U.S. Code § 371; and (h) Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), including but not limited to 42 CFR part 2 ("Part 2") (confidentiality of substance use disorder (SUD) treatment records) and 45 CFR Part 160 and Subparts A and E of Part 164.

14.     Defendants acted under color of state law via Oregon Revised Statutes (ORS) 409.010 et seq; ORS 419A.004 et seq; and 419B.005 et seq.  Defendants were specifically found to have not made requisite reasonable efforts to facilitate reunification and to have been non-compliant with ORS 419B.090(2)-(5) by the Oregon Appellate Court in July 2024 (*Dept. of Human Services v. M.B.*, 333 Or. App. 587 (2024)).  ORS 419B.090(4) specifically requires Defendants to guard the liberty interest of parents protected by the Fourteenth Amendment to the United States Constitution.  ORS 419B.340 requires a determination of reasonable efforts to reunify the family.  The following additional Oregon state laws and regulations are also applicable to Defendants' conduct in this action:  ORS §§ 161.450; 161.455; 163.275; 409.225; 419A.255; 419B.035; 675.010-675.150 and OAR Chapter 858.

15.     This Court has jurisdiction to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and Rule 57 of the Federal Rules of Civil Procedure.

16.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and divisional venue is appropriate in the Portland Division pursuant to local rule 3-2 because the majority of the claims in this action arose in this district and division.  Although the administrative and managerial functions of ODHS are operated out of their headquarters, which are located in Salem (the Eugene Division), the majority of claims in this action arose in or around the Portland

Division in Multnomah County, Oregon. Numerous events significant to this action have also occurred in Salt Lake City, Utah (Salt Lake County, Utah); Beaverton, Oregon (Washington County, Oregon); and Newport, Oregon (Lincoln County, Oregon).

## FACTS UNDERLYING CLAIMS - BACKGROUND

17. The events giving rise to Plaintiff's claims in this action began in April 2017 and are ongoing as of the date of this Amended Complaint. Specific findings by the Oregon Appellate Court in July 2024 of no efforts and no reasonable efforts in violation of federal and state law cite March 2020 as the date on which Defendants' legally-required efforts to reunify Plaintiff with her Child stopped, and August 2021 as the date on which a specific order for reunification therapy was made and Defendant's non-compliance with federal and state reasonable efforts requirements began and continued for years. To date, ODHS has not implemented the reunification therapy service found to be lacking for years by the Oregon Appellate Court in July 2024. Even if ODHS implements the reunification therapy service during the pendency of this action, the harm caused to Plaintiff and her Child by withholding and delaying the service for nearly 4 years is substantial and likely to be long term or permanent in nature.

18. In the Spring of 2017, Defendants began investigating a report of child endangerment in Portland, Oregon involving Plaintiff and her Child. Defendant Dondrea Elmquist, entered a private contract with Plaintiff, which ultimately was revoked by Plaintiff in August 2017 surrounding Plaintiff's compliance with all material terms of the contract and Defendant Elmquist's failure to comply with substantial provisions of the contract. The contract at issue is the subject of a civil action between Plaintiff and Defendant Elmquist currently proceeding in Multnomah County Oregon Circuit Court Case No. 23CV33848.

19. Subsequent to Plaintiff's termination of the contract and closure of the ODHS case investigation involving the contract, Defendant ODHS opened a new case and filed a dependency action against Plaintiff in Multnomah County, Oregon on September 5, 2017 (Multnomah County Case No. 17JU07682), largely based on information provided to ODHS by Defendant Elmquist at that time, much of which was false. ODHS failed to investigate much of the information it provided to the dependency court in its action filed on September 5, 2017. Plaintiff was advised by her then-legal counsel to make certain admissions because, according to

that legal counsel, resisting ODHS would take longer to effect reunification than simply complying with court orders surrounding admissions. Plaintiff, within hours of taking this legal advice and making the admissions, requested that her legal counsel withdraw those admissions so that a trial could be held and facts could be established surrounding false information provided by Defendant Elmquist and otherwise put on the record with the dependency court by ODHS. Plaintiff's legal counsel took no action to effectuate Plaintiff's request.

20.     An initial permanency worker (Angel Dawson) assigned to the case in 2018 engaged in what appeared to be approximately 10 months of reasonable efforts to reunify Plaintiff with Child as required by federal and state law and applicable court orders. These efforts were effective and reunification nearly complete, but were immediately halted approximately two days following Ms. Dawson's departure from her employment at ODHS and subsequent to a contemporaneous argument between Plaintiff and Defendant Elmquist in November 2018 which Child witnessed.

21.     Child was extremely bonded to Plaintiff and experienced trauma as a result of removal from Plaintiff in 2017. Due in part to the trauma of removal and a well-known long-standing conflict between Plaintiff and Defendant Elmquist, continuity and continuation of parent-child therapy was medically recommended as critical for Plaintiff and Child by treating and forensic providers in 2017 and 2018. This therapy was put in place by Angel Dawson of ODHS in early 2018 and was in place in November 2018. In December 2018, ODHS and Defendant Logan Krochalis directed the termination of any parent-child contact and any parent-child therapy against the medical advice of the then-treating therapist, against forensic recommendations, and against the therapeutic and legal interests Plaintiff and Child. When a new caseworker (Joshua Rieman) took over the case in January 2019, he and his supervisor, Defendant Wendy Polzel, continued the withholding of this recommended therapeutic service for Plaintiff and Child. The recommended parent-child therapy has never been reinitiated despite countless court orders and professional recommendations that it is a necessary service, including the August 2021 court order cited by the Oregon Appellate Court in making a no reasonable efforts finding in July 2024. Each day of Defendants' withholding (and promoting the withholding) of this medically necessary service has caused increased harm and risk of harm to both Plaintiff and Child, which has resulted in long-term and permanent ongoing mental and

financial injury to both Plaintiff and Child.  Plaintiff has repeatedly reported this withholding of vital services to the Oregon Governor's Advocacy Office ("GAO"), beginning with the Foster Care Ombudsman Darin Mancuso in 2019 and continuing through reports made within months of this Amended Complaint.  The GAO has provided little to no assistance.  Rather, the GAO seems to simply rubberstamp the representations of caseworkers regarding the withholding of vital services regardless of the harm the withholding does to parents and children, as this has been the clear pattern of conduct since 2019 in the dependency case relevant to this action.  In 2019, Plaintiff reported ODHS withholding of parent-child therapy services and ODHS fabrication of a mental health diagnosis for Plaintiff to the GAO, and nothing was done to ameliorate the concerns until August 2021 when the juvenile court found the diagnosis was never made by the assessor it was attributed to and reunification therapy was ordered, and in July 2024 when the Oregon Appellate Court found the withholding of parent-child reunification therapy services to have been unlawful.

22.    Throughout the dependency case, Defendants have violated numerous of Plaintiff's legal rights and otherwise knowingly, recklessly, or negligently engaged in a pattern of tortious conduct.  Plaintiff has submitted several tort claims notices to ODHS as required by ORS 30.275, the first of which was June 2021 and the latest of which was January 27, 2025.  The Oregon Department of Administrative Services has refused to negotiate the legal violations cited therein and denied all of Plaintiff's claims.  On June 3, 2024, The Oregon Department of Administrative Services sent Plaintiff a letter indicating that they found no negligence on the part of ODHS, its officers, agents, or employees and further, that ODHS employees were "in compliance with Oregon Administrative Rules and internal ODHS procedures" in engaging in the conduct alleged by Plaintiff.  The Oregon Department of Administrative Services appears to have ignored Plaintiff's January 27, 2025 tort claim notice as Plaintiff has received no response.

23.    Each of the claims alleged by Plaintiff in this Complaint as to each of the Defendants constitutes a series of independent, distinct wrongs that are continuing wrongs and unlawful conduct, ongoing as of the date of this Complaint.  As to each claim, Plaintiff alleges that Defendants' actions and inactions, policies, patterns, customs, and/or practices have violated and continue to violate Plaintiff's due process, constitutional, and federal and state statutory and regulatory rights.  Defendants have failed to protect both Plaintiff and Child from harm and risk

of harm while Child has been in their care and Plaintiff subject to dependency court jurisdiction, by failing to provide for continuity in Plaintiff's and Child's mental health needs (i.e. reunification and parent-child therapy), and otherwise failing to make reasonable efforts toward reunification. Plaintiff and her Child have been deprived of necessary and appropriate services and treatment, as clearly court ordered and recommended by treating and forensic therapists since 2017. Plaintiff and her Child continue to be at risk of additional and irreparable injury as a result of Defendants' actions and inactions, policies, patterns, customs, and/or practices.

24.     In addition, Defendants have repeatedly engaged in conduct constituting a series of independent, distinct wrongs that are continuing wrongs and unlawful conduct, ongoing as of the date of this Complaint, involving ignoring or misrepresenting Plaintiff's treating and forensic providers and therapists who have made clear diagnoses and recommendations for treatment and conclusions of treatment completion. Defendants (without a license or authority to do so) have instead promoted and made their own diagnoses and treatment plans, which have included requiring Plaintiff to engage in unnecessary and counter-indicated unethical and, at times, unlawful repetitive mental health treatment, despite consistent recommendations by numerous licensed and forensic providers to the contrary. The purpose of Defendants' ongoing conduct appears to be to intentionally delay reunification efforts in direct contradiction to governing federal and state law and current court orders for reunification and/or to justify past unlawful conduct by blaming Defendants' lack of progress and compliance on unsupported claims about Plaintiff's functioning.

## A.     THE UNITED STATES CONSTITUTION AND FEDERAL LAW IMPOSE CERTAIN REQUIREMENTS FOR THE OREGON CHILD WELFARE SYSTEM.

25.     The Due Process Clause of the United States Constitution imposes an affirmative obligation upon state and local child welfare officials to:

a.      Ensure that parents and children involved in dependency actions are free from the foreseeable risk of physical, mental, and emotional harm;

b.      Ensure that parents and children involved in dependency actions receive the services necessary to ensure their physical, mental, intellectual, and emotional well-being in the least restrictive environment;

c.    Ensure that parents and children involved in dependency actions are so-involved no longer than is necessary to accomplish the purposes of involvement; and

d.    Provide parents and children involved in dependency actions with reasonable efforts to reunify with one another wherever possible within a reasonable period of time.

26.    Defendants and their agents have committed themselves to meeting the rights of foster children by issuing a Foster Children's Bill of Rights.  ORS 418.202; OAR 413-010-0180.

27.    The state of Oregon recognizes the rights of foster children to "be placed in the least restrictive environment that appropriately meets individual needs," to "be provided routine and necessary medical, dental, and mental health care and treatment," and to "be provided services designated for reunification with the parent."  OAR 413-010-0180(1).

## B.    ODHS HAS INADEQUATE PERMANENCY PLANNING TO MEET PLAINTIFF'S AND CHILD'S NEEDS.

28.    Upon information and belief, ODHS is so overburdened that the claims alleged by Plaintiff in this Amended Complaint are common among parents and children involved in the dependency system with ODHS.  Oregon fails to ensure that children like Child remain in foster care for as short a time period as possible, contrary to the requirements of federal law.

29.    Parents and children in ODHS-based dependency cases fail to receive appropriate case plans that fully comply with the requirements for such plans.  Further, parents and children often do not receive necessary services that are required by their case plans, in part because Defendants fail to either provide those services directly or contract for those services.  In Plaintiff's case, Plaintiff did not receive an action agreement as required by Oregon state law for the duration of the case from 2017 through 2024 and severe gaps in letters of expectations existed (e.g. from 2020 through 2024).  Additionally, both Plaintiff and Child have been irreparably injured by the delay in providing consistent medically recommended parent-child therapy for years, despite constant recommendations for its implementation since 2017, and despite a court order in 2021 requiring reunification therapy, in part, to address the effects of withholding appropriate services for Plaintiff and Child.

30.     Visitation with family members is essential in case plans for a child's well-being, is fundamental to permanency, and is vital to a child maintaining family relationships and cultural connections.  However, upon information and belief, due to a lack of resources and planning, ODHS routinely defaults to one hour supervised visitation weekly or biweekly, and in Plaintiff's case, simply stopped visitation for years without the benefit of recommended parent-child therapy to address the lapse and despite consistent indicators from professionals that such a lack of contact could lead to permanent mental injury to both Plaintiff and Child.  ODHS routinely fails to implement graduated visitation plans in order to optimize the chances for success in reunification.

31.     Although federal law requires that case plans must be meaningful and that necessary services must be provided, ODHS regularly places parents and children on waiting lists for services, and parents (like Plaintiff) are referred for services that exist in such small numbers that they never become available within the limited timeframe parents have to comply with case plans.  In Plaintiff's instance, Plaintiff has been waiting for 6 years for resumption of parent-child therapy and for nearly 4 years for court-ordered reunification therapy.

32.     Defendant ODHS' failure to provide necessary services to parents and children often substantially impedes reunification efforts because reunification often is not possible, legally and practically, in the absence of such services.  In Plaintiff's instance, parent-child therapy and reunification therapy has been deemed vital for reunification by ODHS and treating and assessing providers, while ODHS has, at the same time permitted Defendant Polzel and Defendant Kennedy, among others to withhold the service until permanent damage is done to both Child and Plaintiff.  Plaintiff, a resourceful and educated individual, has found numerous providers available for parent-child and reunification therapy, offered to pay, offered to implement the service on her own, only to be met with refusals to do so by ODHS going back to 2019 and before.  Such refusals are a demonstration that not only is ODHS neglecting to provide these services, but is actively withholding them from parents on a routine basis.  As an illustration, in December 2023, Plaintiff offered Defendant Kennedy the name of a national specialist, who recommended a local provider for intensive reunification and family therapy.  Defendant Kennedy refused to event look into the possibility of implementing the service.  Over one year later, this provider is being considered again…following substantial damage to Plaintiff

and Child that would have been partially addressed had Defendant Kennedy not refused to provide the necessary service in 2023 when located and offered by Plaintiff.

33.    ODHS does not comply with requirements that it effectively plan for, and make ongoing reasonable efforts to achieve permanency for children who can be reunified with their parents.

34.    ODHS routinely overlooks maltreatment of children in a foster placement.  ODHS routinely fails to remedy systemic deficiencies that have plagued Oregon's child protection system for years.  ODHS' failure to ensure that dependency-involved children and parents receive adequate mental health treatment and recommended services departs from accepted professional judgment and norms and demonstrates a deliberate indifference to the risk of harm to parents like Plaintiff, and the children which ODHS is legally bound to assist.

35.    ODHS routinely fails to obtain timely mental health services, fails to follow up on therapeutic recommendations, and fails to ensure that there is an adequate array of mental health services available to parents and children it serves.

36.    The American Academy of Pediatrics, Healthy Foster Care American Initiative, has identified mental health as the "greatest unmet health need for children and teens in foster care."

37.    The state of Oregon and ODHS have effectively conceded the inadequacy of efforts to obtain appropriate mental health treatment for foster children and court-involved parents.  A report co-authored by Oregon Governor Kate Brown in September 2018 stated "Currently, there are not adequate resources so that children who require…subacute programs are able to access those settings at the right time, and at their level of need."

38.    This lack of services has been known and detailed for years.  For instance, in the 2016 Child and Family Services Review ("CFSR") conducted by The Children's Bureau (a division of the U.S. Department of Health and Human Services), the review found that mental health treatment offered by DHS has been inadequate.  That review indicated that DHS "continues to struggle with accessing timely and quality Mental Health services for children for outpatient therapy with trained clinicians in the clinical issues of foster care, attachment, engagement, and trauma."

39.     The need for timely and appropriate therapeutic interventions cannot be underestimated given the prevalence of mental health conditions in the foster care population and caused by removal from biological homes, including adjustment disorder and PTSD.

40.     Upon information and belief, there are numerous instances during the life of a dependency case where therapeutic interventions are missed or ignored by ODHS, and a pattern in which ODHS tends to advocate for care planning services, instead of following numerous clinicians' recommendations for prompt intervention.

41.     ODHS lacks the ability to timely provide adequate support services that would enable children to remain in or be returned to their own homes, such as family therapy.

42.     All of these failures have been well-known to Defendants and all of them constitute significant departures from reasonable professional standards and deliberate indifference to the substantial harm and risk of harm to the parents and children in dependency actions in Oregon, including Plaintiff and her Child.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 – Substantive Due Process (Against All Defendants)

43.     Each of the foregoing allegations is incorporated as if fully set forth herein.

44.     ODHS assumes an affirmative duty under the Fourteenth Amendment to the United States Constitution to provide reasonable care to and to protect from harm, a child and a parent with whom it has formed a special relationship, including a child and parent involved in a dependency process;

45.     ODHS assumes an affirmative duty to provide reasonable efforts to reunify a child with her parent wherever possible derived from the First Amendment's right of association and the Ninth Amendment's reservation of rights to the people.

46.     The foregoing actions and omissions of Defendants constitute a policy, pattern, practice, and/or custom that is inconsistent with the exercise of accepted professional judgment

and amounts to deliberate indifference to the constitutionally protected liberty and privacy interests of Plaintiff.

47.    Defendants are well aware of the policies and practices that prevent Plaintiff from receiving adequate protection from harm after ODHS has formed a special relationship with Plaintiff.

48.    As a result, the Plaintiff has been and is at risk of continuing to be deprived of substantive due process rights conferred upon Plaintiff by the United States Constitution.

49.    These substantive due process rights include, but are not limited to:

    a.    the right to freedom from maltreatment while under the supervision of the state and its agencies;

    b.    the right to protection from unnecessary intrusions into Plaintiff's well-being once the state or its agencies have established a special relationship with Plaintiff or her Child;

    c.    the right to services necessary to prevent unreasonable risk of harm to Plaintiff or her Child;

    d.    the right to duration of supervision and foster care reasonably related to the purpose of government intervention;

    e.    the right to treatment and care consistent with the purpose and assumptions of government intervention; and

    f.    the right not to be maintained under supervision of the state longer than is necessary to accomplish the purpose to be served by the supervision.

50.    To the extent that either Plaintiff or her Child are members of the ADA, Plaintiff is at risk of being deprived of substantive due process rights conferred on her by the United States Constitution including, but not limited to:

    a.    The right to be free from discrimination by reason of disability; and

    b.    The right to services in the most integrated setting appropriate to the person's needs.

## SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983 – The Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 670 et seq.  (Against All Defendants)

51.     Each of the foregoing allegations is incorporated as if fully set forth herein.

52.     The foregoing actions and omissions of Defendants constitute a policy, pattern, practice, and/or custom of depriving the Plaintiff of the rights contained in the Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997, to:

    a.     a written case plan that ensures provision of services to parents, children and foster parents to facilitate reunification, and implementation of that plan.  42 U.S.C. §§ 671(a)(16), 675(1)(B).

## THIRD CAUSE OF ACTION

## 42 U.S.C. § 12131 – Americans with Disabilities Act ("ADA"), 42 U.S.C. § 670 et seq. (Against All Defendants)

53.     Each of the foregoing allegations is incorporated as if fully set forth herein.

54.     Title II of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12132, and its enabling regulations, 28 C.F.R. 35.101 et seq., prohibit discrimination against individuals with disabilities.

55.     Plaintiff and/or Child may have or has had disabilities that qualify them as individuals with disabilities within the meaning of the ADA, 42 U.S.C. § 12131(2).

56.     Defendants are public entities, or are public officials or agents of a public entity, subject to the provisions of the ADA, 42 U.S.C. § 12131(1)(A).

57.     Title II of the ADA prohibits a public entity from excluding a person with a disability from participating in, or denying the benefits of, the goods, services, programs and activities of the entity or otherwise discriminating against a person on the basis of disability.

58.     Under the regulations enforcing the ADA, the state may not "[p]rovide a qualified individual with a disability with an aid benefit, or service that is not as effective in affording

equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others…" 28 C.F.R. § 35.130(b)(1)(iii).

59.     Accordingly, ODHS must provide parents and children with disabilities an equal opportunity to access reunification services as it provides to parents and children without disabilities.

60.     Moreover, Defendants have an affirmative duty to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

61.     As a result of the foregoing, Plaintiff and her Child have been, and are at risk of being, deprived of their statutory right to access necessary mental health services (i.e. parent-child therapy/reunification therapy) to make them as able as their non-disabled peers to reunify in a reasonable time.

62.     As a direct and proximate result of Defendants' violations of Title II of the ADA, Plaintiff has been and is at risk of continuing to be injured as set forth above and will continue to suffer injury until Defendants are required to, and have, come into compliance with the requirements of the ADA.

## FOURTH CAUSE OF ACTION

### (Against All Defendants)

### 42 U.S.C. § 1983 – Constitutional and Civil Rights Violations

63.     Each of the foregoing allegations is incorporated as if fully set forth herein.

64.     On July 3, 2024, the Oregon Appellate Court found that Defendant ODHS, had stopped making any efforts toward reunification between Plaintiff and her child in March 2020, and further, following an August 2021 order for reunification therapy between Plaintiff and her child, ODHS failed to engage in reasonable efforts by failing to implement reunification therapy for seven months and then failing to permit Plaintiff to engage in that therapy for years. This contributed significantly to estrangement between Plaintiff and her Child. All Defendants knowingly cooperated with one another to encourage Child to avoid reunification therapy and

parent-child therapy, and to prevent the implementation of reunification therapy and other visitation with Plaintiff. All Defendants, therefore, had a meeting of minds and conspired and contributed to the resulting harm to Plaintiff and her Child and deprivation of Plaintiff's constitutional and civil rights.

65.    Plaintiff notified each of the Defendants beginning in the Summer of 2017, both personally and through experts, that parent-child therapy was recommended, especially where Defendant Dondrea Elmquist was involved in caring for Plaintiff's child. All Defendants intentionally or recklessly ignored these recommendations for significant and impactful periods of time, most notably in Summer 2017 and then again between December 2018 and through the date of this Amended Complaint (most particularly following a court order for reunification therapy in August 2021). All Defendants participated in a plan to separate child from Plaintiff and work against reunification, rather than making federally-required and mandated reasonable efforts toward reunification.

66.    The acts of Defendants described herein were taken under color of state law. Defendants actions implicated numerous state laws, which outline the statutory and constitutional rights that apply while a child is a ward of the state juvenile court. The Defendants violated the policies of the State of Oregon to safeguard and promote each child's right to safety, stability and well-being and to safeguard and promote each child's relationships with parents. The Defendants further violated the policies of the State of Oregon, the United States Constitution, and federal constitutional limitations on state action established by the United States Supreme Court with respect to interference with the rights of parents to direct the upbringing of their children, including, but not limited to, the right to:

        (a) Guide the secular and religious education of their children;

        (b) Make health care decisions for their children.

67.    ODHS failed to make reasonable efforts to reunify a parent and child involved in dependency jurisdiction with consideration of the above cited principals in mind. Defendants failed to engage in reasonable efforts for nearly half a decade and cooperated together in a pattern of conduct intended to work against reunification for the duration of this period of time.

68.    In or around December 2023, Defendant Wendy Polzel emailed Plaintiff and bragged about having successfully broken the attachment between Plaintiff and her child, despite knowing that Ms. Polzel had failed to abide by multiple court orders and laws requiring action

meant to prevent such a result. Defendants Polzel and Kennedy engaged in a pattern of retaliatory conduct toward Plaintiff beginning in January 2019 and continuing through at minimum August 2024, which included multiple attempts to work against reunification between Plaintiff and her Child. This retaliatory conduct appears to have been directly related to a mandated child neglect report made by Plaintiff in December 2018 that appropriate health services (parent-child therapy) were being withheld by ODHS from Plaintiff's Child and such withholding was causing severe trauma and long-term harm to Plaintiff and likely to Child.

69.    In addition to failure to provide appropriate parent-child therapy or reunification therapy and other reasonable efforts toward reunification for years, on or before April 2023, Defendant Dondrea Elmquist published Plaintiff's child's image on her church website, thereby indicating the location of Plaintiff's child and using Plaintiff's child for advertising purposes. Defendant Elmquist further insinuated publicly on this religious website that Plaintiff's child was Elmquist's Child. For a period extending through July 2023, Defendant Dondrea Elmquist refused to remove the image of Plaintiff's child from the website. When Plaintiff requested that Defendant Jillian Kennedy assist in the removal of the religious advertisement using Plaintiff's Child, Ms. Kennedy feigned assistance, argued with Plaintiff about the improper and unlawful conduct of Defendant Elmquist, and ultimately used Plaintiff's requests to participate in the religious involvement of her child as an example of Plaintiff's interference with Child's life, thereby promoting ODHS interference and direction of Plaintiff's Child's religious activities. Ms. Kennedy's activities willfully and directly violated Plaintiff's rights to guide the religious education of her child. Between March 2020 and at minimum October 2023, Defendant Kennedy further refused to include Plaintiff in Plaintiff's child's secular education or inform Plaintiff of same, with no court order or law supporting her conduct

70.    Beginning in December 2018 and continuing through at minimum October 2023, Defendants Polzel and Kennedy refused to involve Plaintiff in the health care of Plaintiff's child, by refusing treatment updates, refusing any kind of information about Plaintiff's health, and in the summer of 2023 by changing the child's appearance through orthodontic treatment that Defendant Kennedy refused to permit Plaintiff permission to participate in or educate herself about. Between the Spring of 2019 and July 2023, Defendant Kennedy hosted only one treatment update meeting between Plaintiff and the individual therapist for Plaintiff's child in July 2023 and refused any substantive collaborative work with Plaintiff or Plaintiff's therapists to

work toward reunification.  Subsequent to the treatment update meeting in July 2023, Defendant Kennedy prepared and caused to be filed with the state dependency court by Defendant Baer, an affidavit misrepresenting what occurred in the treatment update meeting in a direct attempt to limit Plaintiff's access to information about her Child beginning in October 2023.  Defendants Kennedy, Baer, and Krochalis encouraged the individual therapist for Plaintiff's Child to work toward adoption instead of reunification between March 2020 through July 2024, while withholding access to this provider from Plaintiff.  In October 2024, Plaintiff learned that Defendant Kennedy had not provided Child's individual therapist court orders indicating a plan of reunification and for reunification therapy, but rather had only provided the individual therapist an overturned order changing the plan to adoption, which order was only in place for approximately one month before it was overturned.  The same individual therapist noted in her therapy notes that Defendant Baer instructed the individual therapist to work toward a plan of adoption rather than reunification in May 2024.  Defendants Kennedy and Baer further supported the individual therapist in preparing and causing to be filed with the state dependency court by Defendant Baer, an affidavit misrepresenting the July 2023 treatment update meeting consistent with Defendant Kennedy's perjurious affidavit misrepresenting the same.  Plaintiff suffered significant expense in establishing evidence indicating that Defendant Kennedy and the individual therapist were misrepresenting fact in their affidavits.

71.     In February 2024, an Oregon State Citizen Review Board found that Defendant ODHS had failed to engage in reasonable efforts to reunify Plaintiff and her child by withholding legally required action agreements for the length of the case, failing to hold family decision meetings for nearly 4.5 years, and otherwise failing to comply with court orders.  The Citizen Review Board indicated that there were also concerns about undue influence on Plaintiff's Child contributing to estrangement from Plaintiff.

72.     As a direct and proximate cause of Defendants' violations of Plaintiff's civil and Constitutional rights, Plaintiff suffered significant damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### (Against All Defendants)

### 42 U.S.C. § 1983 – Defamation leading to deprivation of rights

73.     Each of the foregoing allegations is incorporated as if fully set forth herein.

74.    In approximately December 2018, Plaintiff made a report to the child abuse hotline out of concern that Defendants were interfering with parent-child therapy as recommended by numerous of Plaintiff's Child's treating providers.  Plaintiff expressed concern that ODHS and its employees were not following their own policies and procedures to act in the best interests of children in their care to avoid mental health harm to Plaintiff's Child.  In response and shortly thereafter, Defendant Wendy Polzel and individuals she supervised (including Joshua Rieman and Defendant Jillian Kennedy) began misrepresenting facts to numerous individuals and entities, including that Plaintiff had a delusional disorder diagnosis and/or psychotic diagnosis that involved a detachment from reality among other symptoms.  Ms. Polzel claimed that she received this diagnosis in a private telephone call with a forensic provider who assessed Plaintiff.  However, the forensic provider failed to ever confirm this private telephone conversation ever occurred, including in a subsequent meeting occurring in early 2020 and again during the provider's testimony in the dependency case in the Summer of 2021 (as recognized by a court order following that testimony), and most recently a third time during the provider's testimony in the dependency case in October 2024.  Despite clear evidence that Plaintiff had no such mental health disorder, Defendants continued making and asserting their own diagnoses, and/or knowingly making false representations of the existence of the diagnosis in numerous public forums and to numerous assessors, which had a negative impact on those assessments and in those forums, and thus, delayed reunification progress.  Defendants made these misrepresentations despite Plaintiff's repeated requests to discontinue the false statements over many years.  As a direct and proximate result, Plaintiff's reunification efforts with her child was delayed and Plaintiff's reputation has been irreparably damaged by Defendants' defamatory statements and actions.  In a May 2024 letter, Plaintiff requested that Ms. Polzel and her supervisees cease and mitigate the misrepresentations made about Plaintiff's mental health diagnosis, which allegations are continuing to be discovered and promoted publicly by Defendants as of the date of this Amended Complaint.  Defendants ODHS, Polzel, and Kennedy have refused to retract their public misrepresentations, despite clear knowledge that those statements have had and will continue to have significant negative impact on Plaintiff's personal and professional reputation and on reunification efforts.  Plaintiff has become aware of the following misrepresentations made by Defendants ODHS, Polzel, and Kennedy which have not been corrected or addressed as of the date of this Amended Complaint:

     a.      Kinship House, 2020;

     b.      Childrens Program, 2022;

     c.      Psychology Review Board, 2022;

     d.      Oregon Adult Protective Services (Madalyn Stone), June 2020 through December 2020;

     e.      Jenna Starr, 2020;

     f.      Western Psychological/LifeStance Health (Numerous Providers), 2020 through Present;

     g.      Vancouver Police Department 2020, various individuals;

     h.      Newport Police Department 2020, various individuals;

     i.      Beaverton Police Department 2018-2019, various individuals;

     j.      CARES NW, 2019;

     k.      Reunification Works (Gina Silva and Michael Alter), 2022;

     l.      Options Therapy (Hansa Guttierez and others), 2019 through Present;

     m.      Numerous Individuals within ODHS, 2018 through Present;

     n.      The Governors Advocacy Office, 2019 through Present;

     o.      Washington State ICPC, 2019-2021;

     p.      Washington State DSHS, 2020;

     q.      Numerous Individuals within Plaintiff's profession, including all attorneys and judges involved in this case, 2018 through Present;

     r.      Defendant Dondrea Elmquist and her associates and family, 2018 through Present; and

     s.      Plaintiff's child, 2018 through Present.

75.     In court between November 2022 and May 2023, Ms. Polzel continued to testify falsely that either she had diagnosed Plaintiff or she had received information that Plaintiff had been diagnosed with mental health conditions which do not exist. Additionally, she continued to insist that Plaintiff be treated for this false diagnosis in order to reunify with her child using unethical treatment modalities which no provider to date has been willing to incorporate into their practice with Plaintiff.

76.    On July 3, 2024, directly following the issuance of the Oregon Appellate Court Order, Defendant Logan Krochalis filed a declaration accompanying a motion to withdraw as counsel for Plaintiff's child, in which Ms. Krochalis knowingly falsely alleged that Plaintiff had interfered with Ms. Krochalis's wedding plans by making a fraudulent call to her wedding planner, among other things.  Ms. Krochalis's declaration was clearly intended to interfere with reunification efforts and further Ms. Krochalis's personal interests without regard to the interests of her client.  Ms. Krochalis's improper influence on Plaintiff's Child and Plaintiff's Child's therapists has been evident between December 2018 and July 3, 2024.  The declaration filed on July 3, 2024 further evidences the lengths to which Ms. Krochalis has gone to defame Plaintiff in order to inhibit reunification efforts and promote her own self interests in her role as Plaintiff's child's counsel.

77.    As a direct and proximate cause of Defendants' defamatory activities, Plaintiff has suffered irreparable reputational harm, emotional distress, outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult, all in amounts to be determined by the jury at trial.  Defendants' defamatory activities have been clearly directed and intended to interfere with Plaintiff's federal and state rights to reasonable efforts to reunify with her Child.

### SIXTH CAUSE OF ACTION

### (Against All Defendants)

### 42 U.S.C. § 1983 – Conspiracy; Coercion leading to deprivation of rights

78.    Each of the foregoing allegations is incorporated as if fully set forth herein.

79.    Defendants engaged in a conspiratorial relationship as that term is defined in Oregon State and Federal law and further conspired to cover the unlawful conduct of ODHS, Defendant Wendy Polzel, Joshua Rieman (former caseworker through 2019), and Defendant Jillian Kennedy as such a conspiracy is defined in Oregon state and Federal law.  Defendants' conduct included injuring, oppressing, threatening, and attempting to intimidate Plaintiff in the free exercise and enjoyment of her rights and privileges secured to her by the Constitution and laws of the United States to parent her own child and be offered services in a timely and reasonable manner aimed at reunifying her with her child where the state has intervened.  In numerous meetings, including in February 2024, Defendants collectively indicated that the only way Plaintiff could show her accountability for her role in her child's trauma was to cease

attempting to defend herself in the legal dependency action brought by ODHS and to cease attempting to promote her parental legal rights to be reunified with and parent her own child. Plaintiff understood this as a threat because of a coexisting juvenile court order(s) limiting Plaintiff's ability to engage in reunification therapy or reunification until accountability was taken as largely defined by ODHS and Defendants.  Defendants actions to work against reunification and withhold reunification therapy and other services was intentional and strongly encouraged by Defendant Logan Krochalis, who sought to prevent reunification services by interfering with Plaintiff's child's therapeutic services and unduly influencing child and her therapists in order to benefit Ms. Krochalis and her own self-interests continuing at minimum through July 2024.  Defendants further engaged in a conspiratorial plan to withhold and interfere in appropriate and court-ordered care to Plaintiff's Child and Plaintiff, thereby leading to the severe trauma of both and estrangement between the two, despite knowing or having significant reason to know that they were violating both Plaintiff's and Plaintiff's Child's civil and constitutional rights.

80.     Defendants further engaged in activities constituting coercion as it is defined in Oregon State and Federal laws by attempting to compel Plaintiff to abstain from enforcing her rights to defend herself in a legal action and to defend her parental rights by instilling a fear that if Plaintiff continued to fight for and defend her parental rights that Defendants would continue falsifying mental health diagnoses relating to Plaintiff, publishing those false diagnoses, and otherwise unlawfully using or abusing the Defendants' positions as public servants by performing acts within or related to their official duties, or by failing or refusing to perform an official duty (e.g. reunification services), in such manner as to affect Plaintiff or her child adversely.

81.     As a direct and proximate cause of Defendants' coercive and conspiratorial activities, Plaintiff suffered severe emotional distress in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**

**(Against All Defendants)**

**42 U.S.C. § 1983 – Discrimination leading to deprivation of rights**

82.     Each of the foregoing allegations is incorporated as if fully set forth herein.

83.     Defendants, having knowledge that Plaintiff had sought mental health treatment historically to address highly traumatic events, repeatedly attempted to falsify information surrounding those events and falsify Platintiff's diagnoses in order to prejudice and impact assessments rather than focusing on building a nexxus between any actual diagnosis and Plaintiff's ability to parent her child safely.  Defendants, in refusing to listen to Plaintiff's treating therapists and instead fabricating their own diagnoses, improperly discriminated against Plaintiff due to her history of obtaining of therapeutic services to address highly traumatic events.  Defendants have subjected Plaintiff to approximately six psychological assessments over in seven years, all yielding consistent or similar results.  Still, where Defendants do not gain support for their fabricated diagnosis, they continue to seek court support and to shop for a psychological assessor who will provide them the diagnosis they seek and to build upon a history of false provision of information and refusals to listen to clearly stated licensed assessments and conclusions.  This pattern of ongoing conduct extends from September 5, 2017 through the date of this Amended Complaint and has caused Plaintiff irreparable harm and financial injury.  None of the Defendants named in this action are licensed mental health professionals in a treatment relationship with Plaintiff and Defendants' conduct further implicates state laws which prohibit the diagnosing and treatment of individuals without a license to do so.

84.     Defendants actions in discriminating against Plaintiff for a history of seeking therapeutic assistance for highly traumatic events and calling into question the accuracy of those traumatic events has caused Plaintiff significant injury, damages for which should be determined at trial.

## EIGHTH CAUSE OF ACTION

### (Against All Defendants)

### Breach of Confidentiality

85.     Each of the foregoing allegations is incorporated as if fully set forth herein.

86.     Defendants each violated Plaintiff's rights to confidentiality in the dependency case and Plaintiff's highly confidential health information and other personally identifiable information numerous times between April 2017 and the date of this Complaint, causing Defendant substantial public ridicule and other danger.  Confidentiality of Plaintiff's information in a state dependency action is strictly required pursuant to Oregon State and Federal laws.

87.    Beginning in January 2019 and continuing through at minimum February 2024, ODHS and other Defendants permitted Plaintiff's Child to remain in the care of Defendant Dondrea Elmquist despite the fact that Ms. Elmquist was obtaining information from the dependency case in her role as a foster resource and then publishing both accurate and false information obtained therein in order to maintain a restraining order against Plaintiff for the sole or substantial purpose of interfering with reunification efforts between Plaintiff and her Child. All Defendants to this action aided and assisted Defendant Elmquist in maintaining and obtaining this restraining order by promoting the order in dependency hearings, encouraging Defendant Elmquist to renew it repeatedly despite no action by Plaintiff to justify the renewals; and assisting Defendant Elmquist in using the order to prevent reunification recommendations that required her cooperation.  This restraining order was dismissed in February 2024 at substantial expense to Plaintiff due to Defendant Elmquist's failure to present credible evidence that Plaintiff was a threat of harm to Defendant Elmquist.

88.    In the Summer of 2022, Plaintiff received an unsealed envelope mailed to a property she shared with others, which announced that Plaintiff's child was placed in the adoptive list of ODHS and an adoption resource identified, despite the fact that reunification was the order of the court and little to no reunification efforts were in place.  Since this time, ODHS has done nothing to reassure Plaintiff that her right to confidentiality has been addressed.

89.    In April 2023, Plaintiff became aware that Defendant Dondrea Elmquist was publishing information about and photos of Plaintiff's Child on a church website with the purported authorization and approval of ODHS and Defendants Polzel and Kennedy.

90.    In December 2020, Plaintiff discovered that ODHS had mailed confidential information about Plaintiff to Plaintiff's husband's sons and then that Defendant Krochalis called Plaintiff's husband's sons in an effort to interfere with Plaintiff's marital relations and well-being.  Defendant Kennedy later interfered with Plaintiff's marital relations in late 2021, causing both Plaintiff and her husband substantial emotional distress and insult, by providing false information to a marital counselor of Plaintiff's and her husband about issues within Plaintiff's marriage which Defendant Kennedy had neither investigated nor confirmed.  Defendant Kennedy then insisted that marital counseling on these false issues must continue before reunification efforts could proceed.  Defendants Kennedy and Polzel continue to falsely promote that they had knowledge regarding Plaintiff's marital relations despite never meeting or talking

to Plaintiff's husband or visiting Plaintiff's home in the 5 years they managed the dependency case. Defendants continue to publicly promote false information regarding Plaintiff's husband, despite clear findings from medical professionals and investigators that this is inaccurate. Defendants Kennedy and Polzel promote this false information in an apparent attempt to mislead the court and other individuals regarding Plaintiff's pattern of conduct.

91.    Plaintiff has discovered that Defendants have individually and collectively leaked other confidential information of Plaintiff between September 2017 and the date of this Complaint, including therapeutic and other medical records, which leaks have led to substantial public ridicule and scorn, including violent incidents of conduct related thereto.

92.    As a direct and proximate result of Defendants' unlawful acts, Plaintiff and her family have suffered emotional distress, outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult, all in amounts to be determined by the jury at trial.

## NINTH CAUSE OF ACTION

### (Against All Defendants)

### Intentional Infliction of Emotional Distress

93.    Each of the foregoing allegations is incorporated as if fully set forth herein.

94.    Defendants each severally and jointly intentionally or recklessly acted in violation of Plaintiff's legal rights. Defendants' conduct was extreme, outrageous, and was a consistent pattern of conduct over the course of many years dating at least as far back as half a decade prior to the filing of this complaint. As a direct and proximate cause of Defendants' conduct, Plaintiff suffered severe emotional distress, and has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult, all in amounts to be determined by the jury at trial.

## TENTH CAUSE OF ACTION

### (Against Christina Sustrik and Dondrea Elmquist)

### Intentional Interference with Contractual Relations; Fraudulent Misrepresentation

95.    Each of the foregoing allegations is incorporated as if fully set forth herein.

96.    Plaintiff discovered on or around May 2023, that Dondrea Elmquist was that instructed by officials at ODHS, including Defendant Christina Sustrik, to violate the provisions

of the contract in place between Plaintiff and Defendant Dondrea Elmquist in the Summer of 2017, which contract was intended to avoid the filing of the dependency action filed in September 5, 2017 (Multnomah County 17JU07682).  These cooperative violations included transferring Plaintiff's child across state lines to Salt Lake City, Utah and withholding the child there, withholding established mental health and medical care from Plaintiff's child, and refusing to return Plaintiff's child to Plaintiff upon Plaintiff's completion of material terms of the contract.  ODHS was not a party to the contract between Plaintiff and Defendant Elmquist, and asserted its lack of involvement to Plaintiff in the Summer of 2017 multiple times.  The supervisor involved at ODHS in the Summer of 2017 was Defendant Sustrik.  Defendant Sustrik's and ODHS' activities during this time led directly to the case filed on September 5, 2017, which could have been avoided had ODHS not interfered in the contract, permitted Plaintiff to transfer care of the child to a safe individual who was willing to cooperate with Plaintiff, and had ODHS not fraudulently misrepresented to Plaintiff that their investigation was finalized upon Plaintiff's announcement in mid-August 2017 that it was Plaintiff's understanding the contract had been completed.  The case filed on September 5, 2017, and the manner in which ODHS has engaged in a pattern of unlawful conduct throughout the case, has caused irreparable injury to Plaintiff which could have been avoided without the intentional interference of ODHS in the contractual relations between Dondrea Elmquist and Plaintiff and without the fraudulent misrepresentations of ODHS and Defendant Sustrik related directly thereto in August 2017.

## ELEVENTH CAUSE OF ACTION

### (Against All Defendants)

### 42 U.S.C. § 1983 – Abuse of Process leading to deprivation of rights

97.     Each of the foregoing allegations is incorporated as if fully set forth herein.

98.     Defendants each had a separate and continuing role to implement, support, cooperate with, and advocate for reunification efforts on behalf of Plaintiff and Plaintiff's Child. By engaging in the legal violations enumerated in this complaint, Defendants abused their legal authority and other processes required as a result of dependency jurisdiction in the underlying case related to this action (Multnomah County Case No. 17JU07682). Defendants further abused their legal authority by intentionally defaming Plaintiff, withholding services to which Plaintiff was legally entitled and engaging in other conduct intended to cover their unlawful actions and

prevent Plaintiff from exercising her federal and state legal rights through acts of coercion and intimidation.

99.    Defendants initiated, commenced or continued the dependency case and portions thereof, work toward adoption, and false representations regarding Plaintiff with the intention of (a) silencing Plaintiffs advocacy on behalf of herself and her child, and (b) covering up the fact that their actions (or lack thereof) were largely based upon Defendant Polzel's false and unsubstantiated representations regarding Plaintiff's mental health diagnoses.

100.    Logan Krochalis had an official responsibility to act as attorney for Plaintiff's child.  Sybille Baer had an official responsibility to act as attorney for ODHS.  While these Defendants acted in their official capacities as attorneys, they each exceeded the scope of their official responsibilities and acted to further their official and individual interests and to further the unlawful activities enumerated in this Complaint.  Each acted ultra vires in unduly influencing other Defendants to work against reunification and to interfere unlawfully with the relationship between Plaintiff and Child.

101.    As a direct and proximate result of Defendants' unlawful acts, Plaintiff and her family have suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult, all in amounts to be determined by the jury at trial.

**WHEREFORE,** the Plaintiff respectfully requests that this Court:

102.    Pursuant to Rule 57 of the Federal Rules of Civil Procedure, declare unconstitutional and unlawful:

a.    Defendants' violation of Plaintiff's right to be free from harm under the Fourteenth Amendment to the United States Constitution;

b.    Defendants' violation of Plaintiff's rights under the First, Ninth, and Fourteenth Amendments to the United States Constitution;

c.    Defendants' violation of Plaintiff's rights under the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997, 42 U.S.C. § 670 et seq.;

d.      Defendants' violation of Plaintiff's rights under Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2), Section 504 of the Rehabilitation Act ("Section 504" or "RA"), 29 U.S.C. § 794, and the respective implementing regulations; and

e.      Defendants' making of diagnoses and developing treatment plans where statutes and regulations governing licensed professions limit those activities to licensed professionals (*See, e.g.* ORS 675.010-675.150 and OAR Chapter 858).

103.    Permanently enjoin Defendants from subjecting Plaintiff to practices that violate her rights, including:

a.      enjoining ODHS from disregarding and disobeying court orders and applicable statutes, particularly those identifying a need for services (such as parent-child therapy to assist in reunification efforts), to ensure those services are timely provided to Plaintiff, in particular where Plaintiff has identified providers and made arrangements to pay for the services where ODHS has been unable or unwilling to do so; and

b.      enjoining ODHS from making unlicensed diagnoses of Plaintiff, publicizing those diagnoses, and requiring that Plaintiff engage in treatment modalities that are not recommended by licensed assessors or providers for those or similarly unlicensed diagnoses, and which otherwise violate Oregon statutes and regulations governing licensed professions.

104.    Award Plaintiff compensatory damages for the violations of Plaintiff's rights and all injuries suffered by Plaintiff as a consequence of those violations.  Plaintiff estimates her past, current and future economic damages, including those resulting from monies spent to address and contest Defendants' unlawful actions over numerous years, as well as lost income, consequential damages, and prejudgment interest to be $5 million.  Plaintiff estimates her non-economic damages, including pain and suffering and emotional distress and monies necessary to address the mental anguish and other traumatic injuries caused by Defendants to be $5 million.

105.    Award Plaintiff presumed and nominal damages where applicable.

106.    Award Plaintiff punitive damages for Defendants violations and deprivations of Plaintiff's rights.

107.    Award Plaintiff reasonable costs and expenses incurred in the prosecution of this action, including reasonable attorney fees should Plaintiff obtain an attorney, pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988, and Federal Rules of Civil Procedure 23(e) and (h); and

108.    Grant such other and further relief as the Court deems just, necessary, and proper to protect Plaintiff from further harm.


Dated:        March 14, 2025        **/s/ Mareesa M. Barrett**

Mareesa M. Barrett, Pro Se
mareesa@barrettlegalgroup.com
310 SW 2nd Street #1526
Newport, Oregon 97365
503-609-0604