IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MAREESA M. BARRETT,                                         No. 3:24-cv-01483-AB

        Plaintiff,                                              OPINION & ORDER

    v.

OREGON DEPARTMENT OF HUMAN
SERVICES, a government agency, in its
official capacity; WENDY POLZEL, in her
official and individual capacities; JILLIAN
KENNEDY, in her official and individual
capacities; CHRISTINA SUSTRIK, in her
official and individual capacities; DARIN
MANCUSO, in his official and individual
capacities; DONDREA ELMQUIST, in
her official and individual capacities;
LOGAN KROCHALIS, in her individual
and official capacities; SYBILLE BAER,
in her individual and official capacities;
DIRECTOR FARIBORZ PAKSERESHT;
DIRECTOR APRILLE FLINT-GERNER;
and DIRECTOR MO GLENN, in their
official capacities,

        Defendants.

1 – OPINION & ORDER

**BAGGIO, District Judge:**

This action arises out of an Oregon state court juvenile dependency matter involving Self-Represented Plaintiff Mareesa M. Barrett and her minor child (hereinafter "Child"). First Am. Compl. ("FAC"), ECF No. 15. Plaintiff brings this action against Defendant Oregon Department of Human Services ("ODHS") and state agents or employees Wendy Polzel, Jillian Kennedy, Christina Sustrik, Darin Mancuso, Sybille Baer, Dondrea Elmquist, Director Aprille Flint-Gerner, Director Fariborz Pakseresht, and Director Mo Glenn (collectively "State Defendants"). *Id.* ¶¶ 2-10, 12. Plaintiff also brings this action against Defendant Logan Krochalis, who served as an attorney for Plaintiff's Child in the underlying juvenile dependency matter. *Id.* ¶ 11.

The parties now move to dismiss all of Plaintiff's claims.[1] Def. Krochalis' Mot. Dismiss ("Def. Krochalis' MTD"), ECF No. 39; State Defs.' Mot. Dismiss ("State Defs.' MTD"), ECF No. 41. For the reasons discussed below, the Court grants in part the parties' motions.[2]

///

///

---

[1] Defendant Krochalis also moves to dismiss under Rule 12(b)(1) and to strike Plaintiff's Amended Complaint under Rule 12(f) and Oregon's Strategic Lawsuit Against Public Participation (Anti-SLAPP) statute, Or. Rev. Stat. § ("ORS") 31.150. Def. Krochalis' MTD 16-20. The Court need not resolve these motions as the Court is dismissing all claims against Defendant Krochalis. The Court, however, notes that Plaintiff admits in her response to Defendant Krochalis' motion to dismiss under Rule 12(b)(1) and strike under Rule 12(f) that she "has . . . not brought this action on behalf of her Child and any references to Child are meant solely to bring context to this action and are intended as such." Pl.'s Resp. State Defs.' MTD 7, ECF No. 48.

[2] Defendant Krochalis also asked the Court to take judicial notice of certain documents from the underlying dependency proceeding and Oregon's standards for representation in juvenile dependency cases. *See* Def. Krochalis' Req. Judicial Notice, ECF No. 40. As these documents are not necessary to the Court's decision, the Court denies Defendant's request.

## BACKGROUND

Plaintiff's claims arise out of Defendants' failure to make efforts to reunify Plaintiff with her Child during eight years of dependency proceedings. The facts underlying this case begin in the spring of 2017, when Defendants began investigating reports of child endangerment involving Plaintiff and her Child, and Plaintiff entered into a "private contract" with Defendant Elmquist—Plaintiff's relative—regarding the care of Child. FAC ¶¶ 10, 18. Plaintiff alleges that after she terminated the contract with Defendant Elmquist and the original child endangerment investigation was closed, Defendant ODHS filed a new dependency action against Plaintiff on September 5, 2017. FAC ¶ 19. Plaintiff alleges that this new case was based largely on false information provided by Defendant Elmquist to Defendant ODHS. FAC ¶ 19.

Angel Dawson—Plaintiff's first permanency worker with ODHS—was assigned the case in 2018 and "engaged in what appeared to be approximately 10 months of reasonable efforts to reunify Plaintiff with Child as required by federal and state law and applicable court orders." FAC ¶ 20. Plaintiff alleges that Ms. Dawson "put in place" parent-child therapy in 2018. FAC ¶ 21. Then, right as reunification was nearly complete and just after Ms. Dawson left ODHS, reunification efforts were halted after Child witnessed an argument between Plaintiff and Defendant Elmquist. FAC ¶ 20.

Most of Plaintiff's claims stem from Defendants' denial of parent-child therapy after Ms. Dawson left ODHS. In December 2018, Defendant Logan Krochalis—the attorney who represented Plaintiff's Child in the underlying action—"directed the termination of any parent-child contact and any parent-child therapy" against medical advice and "the therapeutic and legal interests of Plaintiff and Child." FAC ¶¶ 11, 21. Defendant Wendy Polzel—an ODHS Child Protection Services Supervisor—"continued the withholding of this recommended therapeutic

service for Parent and Child," which has never been reinitiated. FAC ¶ 21. Even when Plaintiff

proposed and offered to pay for providers for parent-child therapy, Defendant ODHS refused.

FAC ¶¶ 6, 32. For example, in December 2023, Plaintiff offered Defendant Kennedy—an ODHS

Child Welfare Permanency Worker—the name of a possible local provider for "intensive

reunification and family therapy." FAC ¶¶ 7, 32. "Defendant Kennedy refused to even[] look

into the possibility of implementing the service." FAC ¶ 32. Plaintiff alleges that beginning in

January 2019 through August 2024, Defendants Polzel and Kennedy "engaged in a pattern of

retaliatory conduct toward Plaintiff" for reporting the withholding of parent-child therapy. FAC

¶ 68. Plaintiff alleges that Defendant Polzel emailed Plaintiff and "bragged about having

successfully broken the attachment between Plaintiff and her [C]hild . . . ." FAC ¶ 68.

Plaintiff further alleges that "countless court orders"—including August 2021 and July

2024 court orders—and treating professionals have concluded that parent-child therapy is a

necessary service that Defendants have made no reasonable efforts to provide. FAC ¶ 21.

Defendants have "intentionally or recklessly ignored these recommendations" from 2017 through

2025. FAC ¶ 65. Plaintiff alleges that the withholding of this service has harmed both Plaintiff

and her Child mentally and financially. FAC ¶¶ 21, 32.

Plaintiff generally alleges that Defendant ODHS cannot meet the needs of families in the

dependency system due to a lack of resources:

> ODHS is so overburdened that the claims alleged by Plaintiff in this Amended
> Complaint are common among parents and children involved in the dependency
> system with ODHS. Oregon fails to ensure that children like Child remain in foster
> care for as short a time period as possible, contrary to the requirements of federal
> law.

FAC ¶ 28. Specifically, these families fail to receive appropriate case plans and the services

required by those plans, including parent-child therapy, visitation with family members, and

mental health services. FAC ¶¶ 29-31, 35, 37. This failure to provide services to families "often substantially impedes reunification efforts because reunification often is not possible, legally and practically, in the absence of such services." FAC ¶ 32. Plaintiff alleges that "[t]his lack of services has been known and detailed for years." FAC ¶ 38.

"Plaintiff has repeatedly reported this withholding of vital services to the Oregon Governor's Advocacy Office ('GAO'), beginning with the [GAO] Foster Care Ombudsman [Defendant] Darin Mancuso in 2019 . . . ." FAC ¶¶ 9, 21. Plaintiff alleges that the GAO has never addressed her concerns. FAC ¶ 21. Plaintiff has also submitted several tort claims notices to Defendant ODHS. FAC ¶ 22. The State of Oregon has denied all of Plaintiff's claims. FAC ¶ 22.

Plaintiff also alleges other ways in which Defendants have sought to interfere with her relationship with Child. Plaintiff alleges that Defendants violated her rights to guide the religious education of her Child and to direct the health care of her Child. For example, Plaintiff alleges that Defendant Elmquist published—and refused to remove—an image of Plaintiff's Child's on Defendant Elmquist's church's website. FAC ¶ 69. Plaintiff also alleges that Defendant Kennedy failed to assist Plaintiff in removing the photo. FAC ¶ 69. And from March 2020 through October 2023, Defendant Kennedy refused to include Plaintiff in her Child's secular education. FAC ¶ 69. According to Plaintiff, Defendants Polzel and Kennedy have prevented her from participating in her Child's healthcare since 2018. FAC ¶ 70. Specifically, they have refused to provide Plaintiff with treatment updates and changed her Child's appearance through orthodontic treatment. FAC ¶ 70.

Plaintiff alleges that Defendants ODHS, Polzel, and Kennedy made various defamatory statements beginning in 2018 to different agencies and individuals involved in the underlying

dependency case, including Plaintiff's Child. FAC ¶ 74. Defendants are alleged to have "misrepresent[ed] facts" about Plaintiff's mental health, including that she had a "delusional disorder diagnosis and/or psychotic diagnosis that involved a detachment from reality among other symptoms." FAC ¶ 74. Plaintiff also alleges that Defendant Krochalis falsely alleged in a filing with the state court that Plaintiff interfered with Defendant Krochalis's wedding. FAC ¶ 76. Plaintiff alleges that these misrepresentations delayed and irreparably damaged the reunification process with her Child. FAC ¶¶ 74, 76.

Plaintiff also alleges that Defendants "violated [her] rights to confidentiality" numerous times throughout the underlying dependency proceedings. FAC ¶ 86. Beginning in 2019, Defendant Elmquist used information from the dependency proceedings to maintain a restraining order against Plaintiff. FAC ¶ 87. In 2022, Plaintiff received an unsealed envelope at a property she shared with others announcing that Plaintiff's Child was being placed on the adoptive list. FAC ¶ 88. And in December 2020, Plaintiff alleges that Defendants ODHS and Krochalis shared information with Plaintiff's husband's sons to interfere with Plaintiff's marriage. FAC ¶ 90. Plaintiff also generally alleges that Defendants "individually and collectively leaked other confidential information of Plaintiff, . . . including therapeutic and other medical records . . . ." FAC ¶ 91.

Plaintiff alleges that all of these claims "constitute[] a series of independent, distinct wrongs that are continuing wrongs and unlawful conduct, ongoing as the date of [the Amended] Complaint." FAC ¶ 23. Plaintiff alleges Defendants have violated her "due process, constitutional, and federal and state statutory and regulatory rights" through their actions and inactions and have failed to protect Plaintiff and her Child from harm while in their care. FAC ¶ 23.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the Court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of their "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct . . . ." *Id.* at 679.

Courts must liberally construe *pro se* pleadings. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) *overruled on other grounds by Munoz v. Superior Ct. of L.A. Cnty.*, 91 F.4th 977 (9th Cir. 2024). Additionally, a court cannot dismiss a *pro se* complaint without first explaining to the plaintiff the deficiencies of the complaint and providing an opportunity to amend. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Dismissal of a *pro se* complaint without leave

to amend is proper only if it is clear that the deficiencies of the complaint could not be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

## DISCUSSION

Collectively, Defendants move to dismiss all of Plaintiff's claims, arguing: (1) Plaintiff's claims against Defendant ODHS and Defendants Director Pakseresht, Director Flint-Gerner, and Director Glenn ("Director Defendants") are barred by the Eleventh Amendment; (2) Plaintiff's claims against Defendant Baer are barred by absolute immunity; (3) Plaintiff's claims against Defendant Krochalis are barred by the absolute litigation privilege and the state action doctrine; (5) Plaintiff fails to adequately allege some of her claims; (6) many of Plaintiff's claims are barred—in whole or in part—by the applicable statute of limitations; and (7) Plaintiff has failed to state a timely claim against Defendant Mancuso. The Court addresses each set of arguments in turn.[3]

## I.    Defendant ODHS & Director Defendants

State Defendants argue that Defendant ODHS, as a state agency, and Director Defendants, as state officers, are entitled to sovereign immunity under the Eleventh Amendment. *See* State Def.'s MTD 10-11. The Eleventh Amendment generally bars suits against non-consenting states. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 (1984); *Papason v. Allain*, 478 U.S. 265, 276-78 (1986). "The Eleventh Amendment bars citizens from

---

[3] The Court notes that because Plaintiff's claims involve an underlying state court proceeding, *Younger v. Harris*, 401 U.S. 37 (1971), may apply to this case. *See H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000) (applying *Younger* and holding that "family relations are a traditional area of state concern," and that states have a particularly "vital interest in protecting the authority" of its orders and judgments in the field of domestic relations) (citation modified). The parties, however, have not adequately raised this issue with the Court, and the Court declines to address it further. Should Plaintiff decide to file an amended pleading, the Court will require the parties to address this jurisdictional question.

bringing suits in federal court against a state for prospective relief or for money damages unless immunity is waived by the state or abrogated by the United States Congress." *Erwin v. Or. ex rel. Kitzhaber*, 231 F. Supp. 2d 1003, 1007 (D. Or. 2001), *aff'd* 43 F. App'x 122 (9th Cir. 2002).

Here, there is no question that Defendant ODHS is a state agency entitled to Eleventh Amendment protections. There is no evidence that Oregon has waived Eleventh Amendment immunity here for Plaintiff's state tort claims, *Estate of Pond v. Oregon,* 322 F.Supp.2d 1161, 1165 (D. Or. 2004) (finding the Oregon Tort Claims Act does not waive the State of Oregon's Eleventh Amendment immunity to suit in federal court), and § 1983 does not abrogate that immunity, *Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Thus, Defendant ODHS is immune from suit under § 1983 and state tort law, and these claims are dismissed against it.[4]

As to the Director Defendants sued in their official capacity, Plaintiff's state tort claims are also barred by the Eleventh Amendment. *See Pennhurst*, 465 U.S. at 105-106 (finding the Eleventh Amendment bars suits for state claims against state officials in their official capacity regardless of the relief sought). As to Plaintiff's § 1983 claims, however, "suits seeking prospective relief under federal law may ordinarily proceed against state officials sued in their official capacities," *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122

---

[4] No party, however, has addressed whether Plaintiff's claim under Title II of the ADA against Defendant ODHS and Director Defendants is barred by the Eleventh Amendment. *See Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004) ("Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment."); *U.S. v. Georgia*, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."); *see also Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187-88 (9th Cir. 2003) (holding "Title II's statutory language does not prohibit [the plaintiff's] injunctive action against state officials in their official capacities"). Because Plaintiff has otherwise failed to state a claim under Title II of the ADA, the Court declines to address this issue *sua sponte*.

F.4th 825, 842 (9th Cir. 2024), so long as the state official has "some connection with the enforcement of the [challenged] act," *Ex parte Young*, 209 U.S. 123, 157 (1908).

Here, however, Plaintiff has failed to sufficiently allege Director Defendants had a connection with the enforcement of the challenged laws or acts alleged in Plaintiff's Amended Complaint. Defendant Pakseresht is the director of ODHS. FAC ¶ 3. Defendant Flint-Gerner is the director of Child Welfare, a subdivision of ODHS. *Id.* ¶ 4. And Defendant Glenn is the Director of GAO, a subdivision of ODHS. *Id.* ¶ 5. Plaintiff sues the Director Defendants solely in their official capacities as ODHS directors. *Id.* ¶¶ 3-5. Plaintiff makes no specific allegations regarding the Director Defendants or their involvement in the underlying proceedings. Instead, she generally alleges that Director Defendants "oversee" ODHS, Child Welfare, and GAO programs and are responsible for these agencies' policies, practices, and operations. But Plaintiff does not specifically allege that Director Defendants are connected with the enforcement of any specific policy involved in this case. Accordingly, the § 1983 claims—for damages and for prospective injunctive relief—against Director Defendants are dismissed.

## II.    Defendant Baer

State Defendants argue that Defendant Baer—an Assistant Attorney General with the Oregon Department of Justice—is entitled to absolute immunity from suit because the alleged misconduct described in the Amended Complaint, even if true, is not wholly unrelated to or outside of Defendant Baer's official duties. State Defs.' MTD 11-12. Plaintiff alleges that Defendant Baer encouraged Child's therapist "to work toward adoption instead of reunification" and further supported Child's therapist in preparing an affidavit that allegedly "misrepresent[ed] the July 2023 treatment update meeting consistent with Defendant Kennedy's perjurious affidavit misrepresenting the same." FAC ¶ 70. Plaintiff also generally alleges that Defendant

Baer exceeded her official capacity as an attorney and in doing so "exceeded the scope of [her] official responsibilities and acted to further [her] official and individual interests and to further the unlawful activities enumerated in [the Amended] Complaint." FAC ¶ 100. Plaintiff makes no other specific factual allegations related to Defendant Baer.

Defendant Baer is entitled to absolute immunity from suit, even for those claims brought against her in her individual capacity. Courts have extended the doctrine of absolute immunity for prosecutors, *see Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), to child-dependency proceedings because "the initiation and pursuit of child-dependency proceedings [are] prosecutorial in nature and warrant immunity on that basis," *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir. 2003) (citing *Meyers v. Contra Costa Cnty Dep't of Soc. Servs.*, 812 F.2d 1154 (9th Cir. 1987)); *see also Zayas v. Walton*, CASE NO. C22-18 MJP, 2022 WL 1468997, at *4 (W.D. Wash. May 10, 2022) ("An assistant attorney general acting as legal counsel for the Department of Children, Youth and Families in child dependency proceedings performs quasiprosecutorial functions and is entitled to immunity for actions in connection with initiating and pursuing child dependency proceedings."). This immunity, however, only extends to activities or functions that are "part and parcel of presenting the state's case as a generic advocate." *Cox v. Dep't of Soc. & Health Servs.*, 913 F.3d 831, 837 (9th Cir. 2019). It does not extend to investigatory or administrative functions. *Waggy v. Spokane Cnty. Wash.*, 594 F.3d 707, 710-11 (9th Cir. 2010).

All of Defendant Baer's actions in this case were undertaken in her role as an Assistant Attorney General for the State of Oregon in the underlying dependency proceeding. FAC ¶¶ 70, 100. The specifically alleged conduct—including working with Child's individual therapist to pursue adoption in lieu of reunification and filing documents with the state court—is related to

her pursuit of child-dependency proceedings as an attorney for the State of Oregon. Accordingly, Plaintiff's claims against Defendant Baer are barred by absolute immunity.

## III.    Defendant Krochalis

Defendant Krochalis argues that Plaintiff's state claims are barred under Oregon's absolute litigation privilege and that Plaintiff cannot bring § 1983 claims against her as a private actor. Def. Krochalis' MTD 8, 14. Defendant Krochalis is Child's former court-appointed attorney in the underlying juvenile dependency action. FAC ¶ 11. Plaintiff alleges that "[i]n December 2018, ODHS and Defendant Logan Krochalis directed the termination of any parent-child contact and any parent-child therapy . . . ." *Id.* ¶ 21. Between March 2020 and July 2024, Defendant Krochalis and others "encouraged the individual therapist for Plaintiff's Child to work toward adoption instead of reunification . . . ." *Id.* ¶¶ 70, 79. On July 3, 2024, Defendant Krochalis filed a motion to withdraw as counsel with a declaration that "falsely alleged that Plaintiff had interfered with [Defendant] Krochalis's wedding plans . . . ." *Id.* ¶ 76. Plaintiff also alleges that in December 2020, Plaintiff discovered that Defendant Krochalis reached out to Plaintiff's husband's sons in an effort to interfere with Plaintiff's marriage. *Id.* ¶ 90.

### A.    State Law Claims

Defendant Krochalis is entitled to Oregon's absolute litigation privilege for Plaintiff's state law claims for Breach of Confidentiality and Intentional Infliction of Emotional Distress. The scope of the absolute litigation privilege is liberal: "[I]t encompasses actions taken and statements made in connection with a judicial proceeding, and it embraces anything that may possibly be pertinent." *Triem v. State Farm Fire & Cas. Co.*, Case No. 3:21-cv-00710-AN, 2024 WL 4349113, at *3 (D. Or. Sept. 30, 2024) (citations and quotation marks omitted). "The privilege applies to 'statements or writings made during or as part of the litigation itself' and to 'similar statements which are made by a lawyer outside of the pleadings and actual trial of the

case' if the statements or writings have 'some relation' thereto." *Davoodian v. Rivera*, 327 Or. App. 197, 216, 535 P.3d 309 (2023) (quoting *Chard v. Galton*, 277 Or. 109, 113, 559 P.2d 1280 (1977)). The absolute privilege applies to "any tort action." *Wollam v. Brandt*, 154 Or. App. 156, 162 n.5, 961 P.2d 219 (1998) (2023).

There is one exception to the privilege: "An actor's conduct is so egregious as to be deprived of the protections of the absolute privilege when that conduct satisfies the elements of wrongful initiation." *Mantia v. Hanson*, 190 Or. App. 412, 429, 79 P.3d 404 (2003) (finding that a claim for tortious interference with economic relations may be excepted from a claim of absolute litigation privilege where the "improper means" of interference is alleged to have been the "prosecution of unfounded litigation"). The elements for wrongful initiation are:

> (1) The commencement and prosecution by the defendant of a judicial proceeding against the plaintiff; (2) The termination of the proceeding in the plaintiff's favor; (3) The absence of probable cause to prosecute the action; (4) The existence of malice, or as is sometimes stated, the existence of a primary purpose other than that of securing adjudication of the claim; and (5) Damages.

*Alvarez v. Retail Credit Ass'n*, 234 Or. 255, 259-60, 381 P.2d 499 (1963).

The allegations against Defendant Krochalis largely pertain to her role as Child's attorney in the underlying dependency proceedings.[5] *See* FAC ¶¶ 70, 76, 79, 90. Additionally, Plaintiff fails to allege or satisfy the elements for a wrongful initiation claim as described above. Accordingly, the Court dismisses Plaintiff's state law claims against Defendant Krochalis as barred by Oregon's absolute litigation privilege.

///

---

[5] To the extent that Plaintiff's allegations do not have any relation to the underlying dependency proceedings, Plaintiff's state law claims against Defendant Krochalis also fail because they are time-barred. *See infra* Section V. Plaintiff, for example, alleges in her claim for Breach of Confidentiality that Defendant Krochalis sought to interfere with her marriage in 2020. This falls outside of the two-year statute of limitations applicable to this claim. *See* ORS 12.110.

B.    Section 1983 Claims

Defendant Krochalis is not subject to suit under § 1983 as a private actor. "[P]rivate parties are not generally acting under color of state law." *Price v. State of Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). Only in "exceptional cases" will a private entity be treated as a state actor under § 1983. *O'Handley v. Weber*, 62 F.4th 1145, 1155-56 (9th Cir. 2023).

A private party may act under color of state law "where there is significant state involvement in the action." *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991). The plaintiff must allege that the private party "is a willful participant in joint action with the State or its agents." *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008); *see also Children's Health Defense v. Meta Platforms, Inc.*, 112 F.4th 742, 754 (9th Cir. 2024) (describing the "state policy" and "state actor" requirements to bring a § 1983 claim against a private party). In other words, the court must determine "whether the nature of the relationship between the private party and the government is such that 'the alleged infringement of federal rights is fairly attributable to the government.'" *Children's Health Defense*, 112 F.4th at 754 (brackets omitted) (quoting *Pasadena Republican Club v. Western Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021)).

Here, there is no dispute that Defendant Krochalis—as Child's attorney, FAC ¶¶ 11—is not a state actor. *See Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1345 (9th Cir. 1981), *rev'd on other grounds*, 745 F.2d 1221 (9th Cir. 1984) (finding that retained and court appointed counsel generally do not act under color of state law). Nor are there allegations in the Amended Complaint to show that Defendant Krochalis was a willful participant in joint action with the state. Rather, Plaintiff broadly asserts that Defendant Krochalis encouraged Defendants to work against reunification and "sought to prevent reunification services by interfering with Plaintiff's Child's therapeutic services and unduly influencing Child and her therapists in order

to benefit [Defendant] Krochalis and her own self-interests continuing at minimum through July 2024." FAC ¶ 79. But Plaintiff also admits that Plaintiff Krochalis owed a duty to Plaintiff's Child. FAC ¶ 100. These allegations that Plaintiff worked alongside state actors and acted in her own self-interest and the interests of Child are insufficient to show joint action with the state. Because Defendant Krochalis is not a state actor all claims against her arising under § 1983 are dismissed.

## IV.    Failure to State a Claim

Defendants also move to dismiss for failure to state a claim many of the remaining claims against Defendants Krochalis, Sustrick, Polzel, Kennedy, and Elmquist. Def. Krochalis' MTD 9-13, 16; State Defs.' MTD 9-10, 12-14.

### A.    Second Cause of Action: Adoption Assistance and Child Welfare Act Under § 1983

Defendant Krochalis moves to dismiss Plaintiff's claim for violation of the Adoption Assistance and Child Welfare Act, arguing that Plaintiff's claim fails as a matter of law. Def. Krochalis' MTD 9-10. Although § 1983 makes state actors liable for violating federal rights, "not every federal law gives rise to a federal right that private parties can enforce under § 1983." *Polk v. Yee*, 36 F.4th 939, 942 (9th Cir. 2022). In *Suter v. Artist M.*, 503 U.S. 347, 363-64 (1992), the Supreme Court concluded that the Adoption Assistance and Child Welfare Act does not give rise to a federal right that a private party can enforce under § 1983. As a violation of the Act is not privately enforceable under § 1983, Plaintiff's Second Cause of Action is dismissed.

### B.    Third Cause of Action: Americans with Disabilities Act

Defendants move to dismiss Plaintiff's claim under the Americans with Disabilities Act ("ADA"). Def. Krochalis' MTD 12-13; State Defs.' MTD 13-14. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded

from participation in or be denied the benefits of the services, programs, or activities of a public

entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim

under Title II of the ADA, Plaintiff must show that "(1) she is a qualified individual with a

disability; (2) she was excluded from participation in or otherwise discriminated against with

regard to a public entity's services, programs, or activities, and (3) such exclusion or

discrimination was by reason of her disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th

Cir. 2002) (citing *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.

1997)).

Plaintiff states that "Plaintiff and/or Child may have or has had disabilities that qualify

them as individuals with disabilities within the meaning of the ADA." FAC ¶ 55. Based on the

Amended Complaint, however, it is not apparent what disability or disabilities Plaintiff may

have. Additionally, throughout the Amended Complaint, Plaintiff states that she does not have a

mental health condition or disorder. *See* FAC ¶¶ 21, 74, 75, 80, 99. Indeed, Defendants'

allegedly false allegations regarding Plaintiff's mental health serve as the basis for many of

Plaintiff's claims. *See, e.g.*, FAC ¶ 74 (alleging defamation based on false statements that

Plaintiff had a "delusional disorder diagnosis and/or psychotic diagnosis"). Taken in context,

Plaintiff's vague allegations and arguments based on unspecified "mental health disorders"

and/or "mental health conditions" are insufficient to state a claim under Rule 12(b)(6). Because

Plaintiff has failed to plausibly establish that "she is a qualified individual with a disability,"

*Lovell*, 303 F.3d at 1052, Plaintiff's Third Cause of Action under the ADA is dismissed.

Further, there is no individual liability under Title II of the ADA. *Vinson v. Thomas*, 288

F.3d 1145, 1156 (9th Cir. 2002) "[A] plaintiff cannot bring an action under 42 U.S.C. § 1983

against a State official in her individual capacity to vindicate rights created by Title II of the

ADA . . . ." *Id.* Thus, to the extent Plaintiff brings claims against the individual Defendants in their individual capacities, those claims are barred as a matter of law.

C.    Fifth Cause of Action: Defamation Leading to Deprivation of Rights Under § 1983

Defendants move to dismiss Plaintiff's claim for defamation under Rule 12(b)(6). Def. Krochalis' MTD 12; State Defs.' MTD 13. "Section 1983 limits a federal court's analysis to the deprivation of rights secured by the federal 'Constitution and laws.'" *Lovell By & Through Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996). Thus, "[t]o state a claim for defamation under section 1983, a plaintiff must allege loss of a recognizable property or liberty interest in conjunction with the allegation of injury to reputation." *Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir. 1991), *on reh'g*, 963 F.2d 1220 (9th Cir. 1992). This is known as the "'stigma-plus' test." *Id.* There are two ways to meet this test: (1) "allege that the injury to reputation caused the denial of a federally protected right" or (2) "allege[] the injury to reputation was inflicted in connection with a federally protected right." *Id.*

Here, Plaintiff fails to satisfy the "stigma-plus test" under § 1983. Plaintiff does not specifically identify the federally protected right involved in the alleged defamation and the causal connection between the defamation and her constitutional rights. *See* FAC ¶¶ 73-77. Even assuming that Plaintiff can allege that the defamatory statements caused the deprivation of her rights under the Fourteenth Amendment, Plaintiff fails to specifically allege that the misrepresentations made to, for example, "Kinship House" and "Childrens Program" deprived of her of these rights. *See Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002) ("[I]njury to reputation alone is not sufficient to establish a deprivation of a liberty interest protected by the Constitution."). Further, there are no specific allegations as to the substance of those misrepresentations or how they were defamatory. *See Crowe v. Cnty. of San Diego*, 608

F.3d 406, 444 (9th Cir. 2010) (finding that a "defamation-plus claim" fails where the statements at issue were not defamatory as a matter of law). Thus, to the extent that any of these misrepresentations are within the statute of limitations, *see infra* Section V, Plaintiff fails to allege specific facts from which the Court could find that Plaintiff has plausibly stated a claim for "defamation" under § 1983. Plaintiff's Fifth Cause of Action is therefore dismissed for failure to state a claim.

      D.      Sixth Cause of Action: Conspiracy Under § 1983

Defendant Krochalis moves to dismiss Plaintiff's claim for conspiracy. Def. Krochalis' MTD 11. "Conspiracy is not itself a constitutional tort under § 1983." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012). Rather, it "may . . . enlarge the pool of responsible defendants by demonstrating their causal connections to the [constitutional] violation." *Id.* "To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (quotation omitted).

Plaintiff appears to concede that she cannot bring a standalone claim for conspiracy. *See* Pl.'s Resp. State Defs.' MTD 20 (noting that Plaintiff's Sixth Cause of Action is not a "stand-alone claim"). But Plaintiff's conspiracy claim does just that. *See* FAC ¶¶ 78-81 (broadly alleging Defendant's engaged in a conspiratorial relationship" to deprive Plaintiff of her rights). Plaintiff also fails to plausibly allege that Defendants engaged in a conspiracy. Rather than allege a "meeting of the minds," Plaintiff makes the conclusory allegation that Defendants "engaged in a conspiratorial relationship as that term is defined in Oregon State and Federal law . . . ." FAC ¶ 79. Accordingly, this claim is dismissed.

///

E.        Eighth Cause of Action: Breach of Confidentiality Under State Law

State Defendants argue that a breach of confidentiality is not a tort under Oregon law.

State Defs.' MTD 14. The Oregon Court of Appeals, however, has stated that "[m]any

authorities refer to the tort [of breach of confidentiality] as 'breach of confidence.'" *Stevens v.*

*First Interstate Bank of Cal.*, 167 Or. App. 280, 286 n.4, 999 P.2d 551 (2000) (citing *Humphers*

*v. First Interstate Bank of Or.*, 298 Or. 706, 717, 696 P.2d 527 (1985) and Note, *Breach of*

*Confidence: An Emerging Tort,* 82 Colum. L. Rev. 1429 (1982)). Insofar as Plaintiff brings a

claim under Oregon common law for breach of confidence, Plaintiff must allege an

"unauthorized and unprivileged disclosure of confidential information obtained in a confidential

relationship." *Humphers*, 298 Or. at 717. Further, the duty to maintain confidentiality must arise

from a "legal source external to the tort claim itself." *A.B. v. Or. Clinic*, 321 Or. App. 60, 70, 515

P.3d 387  (2022) (quoting *Humphers*, 298 Or. at 719). The burden is on the plaintiff to identify

this source and show that it creates a duty to keep the information at issue confidential. *Id.*

In response to Defendants' motion, Plaintiff identifies federal and state statutes

"governing confidentiality of Plaintiff's information in child dependency cases . . . ." Pl.'s Resp.

State Defs.' MTD 21. But Plaintiff fails to specifically allege in her Amended Complaint that

these statutes create a duty to keep the information at issue confidential under the circumstances

in which it was disclosed. *A.B.*, 321 Or. App. at 70 (2022) (quoting *Humphers*, 298 Or. at 719).

For example, Plaintiff has not alleged sufficient facts to show that information submitted to the

state court regarding a restraining order or the publication of a photo of Plaintiff's Child on a

church website amount to a breach of confidence. FAC ¶¶ 87, 89. Accordingly, while the Court

disagrees with Defendants that Breach of Confidence is not a tort under Oregon law, Plaintiff has failed to adequately allege to such a claim in her Amended Complaint.[6] This claim is dismissed.

F.    Tenth Cause of Action: Fraudulent Misrepresentation

Defendants Elmquist and Sustrik move to dismiss Plaintiff's claim for Fraudulent Misrepresentation, arguing that Plaintiff fails to plead with specificity the circumstances constituting fraud as required under Federal Rule of Civil Procedure 9(b).[7] State Defs.' MTD 9-10. In alleging fraud, the complaint must meet the heightened pleading standard of Rule 9(b). Under this standard, the plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A pleading satisfies Rule 9(b) if it identifies "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). "'A plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.'" *Id.* (quoting *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.*), 42 F.3d 1541, 1548 (9th Cir. 1994)).

---

[6] In her response, Plaintiff also cites ORS 162.425(1) and ORS 162.405. Pls.' Resp. State Defs.' MTD 21. But "a private party may not enforce criminal statutes through a civil action." *Benson v. Hemet Gatekeepers Sec. Guards*, Case No. 5:20-cv-02593-JWH (SPx), 2020 WL 8630496, at *1 (C.D. Cal. Dec. 21, 2020). Plaintiff is a private party therefore she cannot enforce ORS 162.425(1) and ORS 162.405 because they are criminal statutes.

[7] In her complaint, Plaintiff also refers to this claim as a claim for "Intentional Interference with Contractual Relations" and makes several allegations concerning the alleged contact between Plaintiff and Defendant Elmquist. FAC ¶¶ 95-96. However, Plaintiff refers to this claim only as a claim for fraudulent misrepresentation in her response to the State Defendants' motion. *See* Pl.'s Resp. State Defs.' MTD 22. The Court further finds that any such claim would fail as a matter of law because Plaintiff has not—and cannot—allege interference with a professional or business relationship. *See Adelsperger v. Elkside Dev. LLC*, 371 Or. 61, 73, 529 P.3d 230 (2023) (holding one element of a claim for intentional interference with contractual relations is "the existence of a professional or business relationship"). Thus, to the extent that Plaintiff brings a claim for Intentional Interference with Contractual Relations, this claim is dismissed.

To establish fraud under Oregon law, the plaintiff must show that "the defendant made a material misrepresentation that was false; the defendant did so knowing that the representation was false; the defendant intended that the plaintiff rely on the misrepresentation; the plaintiff justifiably relied on the misrepresentation; and the plaintiff was damaged as a result of that reliance." *Strawn v. Farmers Ins. Co. of Or.*, 350 Or. 336, 351-52, 258 P.3d 1199 (2011); *see also Knepper v. Brown*, 345 Or. 320, 329 n.5, 195 P.3d 383, 387 (2008) (noting older cases listing nine elements of common-law fraud, and more recent cases using a more abbreviated list of elements).

The only fraudulent misrepresentation Plaintiff identifies in her Tenth Cause of Action is a misrepresentation by ODHS that its "investigation was finalized upon Plaintiff's announcement in mid-August 2017 that it was Plaintiff's understanding that the contract had been completed." FAC ¶ 96. But Plaintiff does not allege that Defendant Sustrik or Elmquist made any misrepresentation that Plaintiff justifiability relied on. Accordingly, Plaintiff has failed to state a claim for Fraudulent Misrepresentation against Defendants Sustrik and Elmquist. Plaintiff's Tenth Cause of Action is dismissed. Should Plaintiff seek to replead this claim, the Court advises Plaintiff that her allegations must meet the heightened pleading standards of Rule 9.

## V.     Statute of Limitations

Defendants argue that may of Plaintiff's claims are barred by the statute of limitations. Def. Krochalis' MTD 10-11; State Defs.' MTD 7-9. Plaintiff's state and federal claims are all subject to a two-year statute of limitations. Statutes of limitation "limit the time a party has to initiate an action once a claim has accrued." *Shasta View Irrigation Dist. v. Amoco Chems.*, 329 Or. 151, 161, 986 P.2d 536 (1999) (brackets and quotation marks omitted). Oregon's statute of limitations under the Oregon Tort Claims Act ("OTCA") for acts of public officers or employees

is two years. ORS 30.275(9). Similarly, Oregon's general tort statute of limitations is two years. ORS 12.110(1). And Plaintiff's federal claims under § 1983 and the ADA are subject to the two-year statute of limitations in ORS 12.110(1). *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012) ("[F]ederal courts look to the law of the state in which the cause of action arose and apply the state law of limitations governing an analogous cause of action."); *Savona v. S. Oregon Univ.*, No. 1:17-CV-01604-AA, 2018 WL 1547843, at *4 (D. Or. Mar. 29, 2018) (applying the two-year statute of limitations in ORS 12.110(1) to the plaintiff's non-employment ADA claims).

A "discovery rule" applies to actions brought under the OTCA, which means that the limitations period "runs from the date that the plaintiff became aware or should have reasonably become aware of the injury." *Sherman v. State by and through Dep't of Human Servs.*, 368 Or. 403, 408, 492 P.3d 31 (2021). Similarly, under § 1983 "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (quoting *TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999)).

Because Plaintiff filed this action on September 5, 2024, all of Plaintiff's claims for conduct that occurred prior to September 5, 2022, are barred by the statutes of limitations. Most of Plaintiff's claims include at least some time-barred conduct. For example, Plaintiff's First Cause of Action under the Due Process Clause stems from the underlying dependency proceedings and includes allegations related to access to services, such as parent-child therapy. FAC ¶ 49. Plaintiff should have known of this claim at least as early as 2019, when Plaintiff alleges she began to report these issues to the GAO. SAC ¶ 21. Plaintiff's Fourth Cause of Action for "Constitutional and Civil Rights Violations" appears to arise out of actions that took place as far back as 2018. SAC ¶¶ 63-71. And Plaintiff's Eleventh Cause of Action for Abuse of Process stems from abuse of the dependency proceedings, which began in 2017. FAC ¶ 98. The

remainder of Plaintiff's claims also include conduct that falls outside of the limitations period.
*See, e.g.*, FAC ¶¶ 21, 59, 61 (alleging lack of access to mental health services and parent-child
therapy—which began in 2018—as basis for ADA claim), 74 (alleging defamatory statements
beginning in 2018), 83 (alleging a pattern of discriminatory conduct beginning September 5,
2017), 86-91 (alleging leaks of "confidential information . . . between September 2017 and the
date of this Complaint. . . ."), 94 (alleging conduct dating "at least as far back as half a decade
prior to the filing of this complaint" as basis for claim for intentional infliction of emotional
distress), 96 (alleging fraudulent misrepresentations by Defendant ODHS in 2017). Thus, as
presently alleged, Plaintiff's First, Third, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and
Eleventh Causes of Action are all barred, at least in part, by the statute of limitations.

        In response to Defendants' statute of limitations argument, Plaintiff appears to argue that
the continuing violations doctrine applies to her claims. *See* Pl.'s Resp. State Defs.' MTD 4
(Defendants "ongoing violations and pattern of violations fall well within the statute of
limitations as all are a series of continuing wrongs that have been ongoing, repetitive, without
relief, for years."). "The continuing violations doctrine functions as an exception to the discovery
rule of accrual 'allowing a plaintiff to seek relief for events outside of the limitations period.'"
*Bird v. Dep't of Human Servs.*, 935 F.3d 738, 746 (2019) (quoting *Knox*, 260 F.3d at 1013). Both
the federal and state courts have limited the circumstances in which the continuing violations
doctrine applies. Oregon courts only allow a plaintiff to sweep in otherwise time-barred acts to a
timely claim where "the harm complained of reaches the level of actionability only at the end of
the series of actions . . . ." *Boardmaster Corp. v. Jackson Cnty.*, 224 Or. App. 533, 550, 198 P.3d
454 (2008) (citation modified). But a plaintiff cannot "designat[e] a series of discrete acts, even
if connected in design or intent," as a continuing tort that would allow the statute of limitations to

be avoided. *Id.* At the federal level, "little remains of the continuing violations doctrine." *Bird*, 935 F.3d at 748. In 2002, the Supreme Court eliminated the so-called "serial acts branch" of the continuing violations doctrine. *Id.* at 746-47 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). The Ninth Circuit has since found that the Supreme Court's 2002 decision also abrogated the "systematic branch" of the continuing violations doctrine. *Id.* at 747. Now, the doctrine applies only in certain hostile work environment claims and cases involving class-wide pattern-or-practice claims. *Id.*

The continuing violations doctrine does not apply to this case. As to Plaintiff's state claims, Plaintiff alleges a series of discrete acts that, while connected, are each separately actionable. *See* FAC ¶¶ 94 (alleging in Plaintiff's claim for Intentional Infliction of Emotional Distress that "Defendants' conduct was extreme, outrageous, and was a consistent pattern of conduct over the course of many years dating at least as far back as half a decade prior to the filing of this complaint"), 86 (alleging specific incidents where Defendants breached Plaintiff's confidence). These are not claims where the "the harm complained of reaches the level of actionability only at the end of the series of actions . . . ." *Boardmaster*, 224 Or. App. at 550 ("[A] cause of action does not reaccrue every time another distress is inflicted.") (citation modified). Because Plaintiff's § 1983 claims do not involve either a class-wide pattern-or-practice claim or a hostile work environment claim, the federal "continuing violations doctrine" is also inapplicable here. *See Bird*, 935 F.3d at 748. Thus, the continuing violations doctrine does not make timely Plaintiff's otherwise time-barred claims.

## VI. Defendant Mancuso

State Defendants also move to dismiss Defendant Mancuso because all claims related to him arise from conduct outside the statutes of limitations and his alleged conduct does not make the claims plausible on their face. State Defs.' MTD 9, 13. The only specific allegation against

Defendant Mancuso is that "Plaintiff has repeatedly reported . . . withholding of vital services to [GAO], beginning with the Foster Care Ombudsman Darin Mancuso in 2019 and continuing through reports made within months of the Amended Complaint." FAC ¶ 21. Plaintiff's singular allegation against Defendant Mancuso does not plausibly state a claim for relief and is time-barred. Defendant Mancuso is therefore dismissed from this case.

## VII.    Leave To Amend

Because it is "absolutely clear that no amendment can cure the defect[s]" in some of Plaintiff's claims, *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016), the Court dismisses the following claims with prejudice: (1) Plaintiff's § 1983 and state law claims against Defendant ODHS; (2) Plaintiff's state law claims and § 1983 claims for damages against Director Defendants; (3) all of Plaintiff's claims against Defendant Baer; (4) all of Plaintiff's claims against Defendant Krochalis; (5) Plaintiff's claim under the Adoption Assistance and Child Welfare Act; (6) Plaintiff's standalone claim for conspiracy; (7) Plaintiff's ADA claim against the remaining individual Defendants in their individual capacities; and (8) Plaintiff's claim against Defendant Mancuso arising out of her 2019 report to the GAO. The Court also dismisses with prejudice any claims based on actions that occurred prior to September 5, 2022.

The Court, however, grants Plaintiff leave to amend: (1) Plaintiff's Third Cause of Action under the ADA against Defendant ODHS and the remaining Defendants in their official capacities; (2) the § 1983 claims against Director Defendants in their official capacities for injunctive relief; and (3) Plaintiff's First, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Causes of Action against Defendants Elmquist, Polzel, Sustrick, and Kennedy, for actions that are not time-barred.

The Court appreciates that Plaintiff is a self-represented party.[8] But it is difficult to assess the exact contours of Plaintiff's claims. Some of Plaintiffs claims, for example, refer to Defendants as a group even though the allegations in the rest of the Amended Complaint are quite limited as to certain Defendants. *Compare* FAC ¶ 94 (Plaintiff's claim for Intentional Infliction of Emotional Distress against all Defendants) *with* FAC ¶ 21 (sole allegation against Defendant Mancuso involving the lack of GAO response to Plaintiff's complaints). Plaintiff also makes sweeping allegations of violations of federal and state law without specifically identifying the legal basis for her claims. *See generally* FAC. Therefore, in addition to addressing the deficiencies identified above, the Court also requires that any amended pleading identify with specificity Plaintiff's claims, including the specific legal bases for each of Plaintiff's claims and the specific actions by specific Defendants that Plaintiff claims were unlawful. *See* Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.").

///

///

///

///

///

///

///

///

---

[8] While Plaintiff appears as a self-represented party, her contact information reflects that she is a member of the Oregon State Bar. Indeed, the Oregon State Bar Membership Directory lists Plaintiff as a member since 1999.

**CONCLUSION**

The Court GRANTS in part Defendant Krochalis' Motion to Dismiss [39], GRANTS in part State Defendants' Motion to Dismiss [41], and DENIES Defendant Krochalis' Request for Judicial Notice [40]. Plaintiff is granted leave to amend her pleading curing the deficiencies identified herein. Any amended complaint is due within 30 days of this Opinion & Order. Failure to file an amended complaint will result in dismissal of this action without prejudice and without further notice.

IT IS SO ORDERED.

DATED this  2nd  day of December, 2025.

*Amy M. Baggio*
_____
AMY M. BAGGIO
United States District Judge